# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **Lee Compton,** § § § | |
| Plaintiff, § § | Civil Action No. 4:22-cv-00331-ALM |
| **v.** § § § | |
| **Celtic Insurance Company and John Does 1-10.** § § § | |
| Defendants. § § | |

## FIRST AMENDED COMPLAINT

Plaintiff Lee Compton (hereinafter referred to as "Compton" or "Plaintiff"), by and through his attorneys, Kimmel & Silverman, P.C., alleges the following against Celtic Insurance Company ("Celtic") and John Does 1-10.

## INTRODUCTION

1. Plaintiff's First Amended Complaint is based on the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227 *et seq*.

2. In 1991, President George H.W. Bush signed into law the TCPA, which was passed in a bi-partisan manner, to protect consumers' privacy rights; specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying Code of Federal Regulations, 47 C.F.R. § 64.1200 *et seq.*, affords special protections for people who registered their phone numbers on the National Do Not Call Registry.

5. Where a consumer's phone number is registered on the Do Not Call registry, the TCPA requires that telemarketers provide clear and conspicuous notice to the consumer that it will be making telemarketing calls for solicitation or advertising purposes, and requires that the consumer provide express written consent.

6. Section 227(c)(5) of the TCPA provides that each person who receives more than one call within a 12-month period on their phone, where that person did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

## **The Parties**

7. Plaintiff Lee Compton is an adult citizen who at all times relevant to this Complaint resided in McKinney Texas.

8. Defendant Celtic is an insurance company headquartered at 200 East Randolph Chicago, Illinois 60601.

9. John Does 1-10 are persons of unknown identities responsible for making Spanish language robocalls to Mr. Compton's cell phone at (972) XXX-9695.

10. Defendants acted through their directors, managers, employees, agents, vendors, contractors and subrogees.

//

**Jurisdiction and Venue**

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over Defendants, as they conduct business in the State of Texas.

13. Furthermore, this Court has specific personal jurisdiction over the Defendants in this action because the Plaintiff, Mr. Compton, resides and works in McKinney, Texas, which is within this District. Mr. Compton received a majority of the offending robocalls and experienced resulting damages within this District.

14. The Defendants availed themselves to this forum by placing calls to Mr. Compton's "972" area code cell phone.

15. Furthermore, Defendant Celtic availed itself to the State of Texas and this District by causing an Ambetter Health Policy issued by Celtic to be mailed to Compton at his address in McKinney, Texas.

16. A substantial percentage of the occurrences and events which underlie this lawsuit occurred within the State of Texas and within this District.

17. For those reasons personal jurisdiction exists and venue is proper under 28 U.S.C. § 1391(b)(2).

//

**Statement of Relevant Facts**

18. At all times relevant to this Complaint, Mr. Compton owned a cell phone, the number for which was (972) XXX-XXXX.

19. Mr. Compton used that cell phone primarily for residential purposes such as speaking with friends and family.

20. Mr. Compton registered his cell phone number on the National Do Not Call Registry on or around January 3, 2005 to obtain solitude from unwanted and invasive telemarketing calls.

21. Mr. Compton was enrolled in a health insurance policy at all times relevant to this lawsuit. Accordingly, Compton was not in the market for health insurance, did not consent or provide permission for telemarketers to place telemarketing calls, or calls with a pre-recorded voice about health insurance.

22. Furthermore, while able to hold basic conversations in Spanish, Compton does not speak the Spanish language fluently.

23. Despite the fact that Compton's number had been registered on the Do Not Call Registry at all times, despite not having consented to receive telemarketing and/or pre-recorded calls about health insurance and despite not speaking the Spanish language, Compton's cell phone has been inundated with robocalls containing pre-recorded Spanish messages soliciting health insurance policies.

24. Mr. Compton understands the aforementioned robocalls pertain to health insurance because he played the recordings to Spanish-speaking family and friends who confirmed the content and nature of the calls.

25. An example of a message received by Compton is below, followed by an English translation:

<u>Message</u>:
Soy Sarah del departamento de seguros médicos, puedes calificar para poder recibir un seguro gratuito. Prima cero, copago cero. Presione uno ahora para obtener información. Presione dos para ser eliminado de la lista.

<u>Translation</u>:
I'm Sarah from the department of medical insurance you can qualify to be able to receive free insurance. Zero premium, zero copay. Press one now to get information. Press two to be taken off the list.

26. Since Mr. Compton began tracking these calls, Defendants placed a shocking and extraordinary volume of invasive and irritating telemarketing calls to Compton's cell phone in furtherance of its efforts to sell medical insurance, for which he had no interest or need and did so in a language he does not speak fluently.

27. Mr. Compton received calls on instances including but not limited to the following:

| Date and Time | Caller ID: |
| --- | --- |
| 03/03/21 04:28:03 PM | 1 (469) 248-4968 |
| 03/08/21 02:52:17 PM | 1 (832) 674-8992 |
| 03/10/21 06:58:14 PM | 1 (915) 745-3689 |
| 03/12/21 01:37:47 PM | 1 (972) 647-1408 |
| 03/26/21 01:37:22 PM | 1 (972) 246-1544 |
| 04/09/21 12:56:15 PM | 1 (972) 276-4309 |
| 04/09/21 03:33:15 PM | 1 (972) 636-9119 |
| 04/14/21 02:49:19 PM | 1 (972) 642-9152 |
| 04/14/21 07:16:19 PM | 1 (972) 473-1949 |
| 04/15/21 02:16:19 PM | 1 (972) 421-2858 |
| 05/06/21 02:53:29 PM | 1 (972) 982-1849 |
| 05/07/21 07:38:30 PM | 1 (972) 334-5385 |
| 05/10/21 03:25:32 PM | 1 (832) 771-6005 |

| | |
|---|---|
| 05/11/21 07:16:34 PM | 1 (972) 539-5639 |
| 05/11/21 07:35:34 PM | 1 (972) 530-6869 |
| 05/12/21 07:05:35 PM | 1 (972) 534-8264 |
| 05/14/21 02:25:27 PM | 1 (903) 436-4243 |
| 05/14/21 05:26:27 PM | 1 (210) 563-6572 |
| 05/17/21 02:10:49 PM | 1 (972) 275-3177 |
| 05/17/21 07:26:49 PM | 1 (903) 814-3525 |
| 05/18/21 03:55:50 PM | 1 (325) 999-7629 |
| 05/28/21 06:33:46 PM | 1 (936) 730-2246 |
| 06/16/21 05:43:09 PM | 1 (210) 233-5730 |
| 06/18/21 05:35:11 PM | 1 (214) 593-5290 |
| 06/21/21 12:56:12 PM | 1 (254) 503-8539 |
| 06/21/21 01:02:12 PM | 1 (469) 204-6349 |
| 06/22/21 02:52:13 PM | 1 (830) 645-2794 |
| 06/22/21 03:25:14 PM | 1 (214) 716-8613 |
| 06/22/21 03:40:14 PM | 1 (432) 688-8137 |
| 06/22/21 06:32:14 PM | 1 (210) 965-5302 |
| 06/23/21 12:33:14 PM | 1 (210) 507-7951 |
| 06/23/21 01:49:15 PM | 1 (214) 279-7746 |
| 06/23/21 06:28:15 PM | 1 (713) 497-6572 |
| 06/24/21 03:34:15 PM | 1 (512) 352-7508 |
| 06/24/21 06:47:16 PM | 1 (806) 434-7248 |
| 06/25/21 02:57:16 PM | 1 (713) 740-6758 |
| 06/28/21 12:33:08 PM | 1 (817) 816-6756 |
| 06/29/21 02:44:10 PM | 1 (469) 285-7206 |
| 06/30/21 02:36:11 PM | 1 (956) 723-5507 |
| 07/01/21 05:26:12 PM | 1 (979) 732-1677 |
| 07/02/21 02:44:13 PM | 1 (972) 306-6449 |

| | |
|---|---|
| 07/06/21 05:10:15 PM | 1 (936) 257-6881 |
| 07/07/21 02:45:16 PM | 1 (979) 292-8602 |
| 07/07/21 03:28:16 PM | 1 (713) 904-8450 |
| 07/09/21 01:49:34 PM | 1 (409) 557-2536 |
| 07/09/21 06:44:34 PM | 1 (281) 685-8022 |
| 07/09/21 06:46:34 PM | 1 (817) 283-4923 |
| 07/12/21 12:16:36 PM | 1 (979) 633-0948 |
| 07/12/21 03:28:36 PM | 1 (432) 363-3353 |
| 07/13/21 01:07:37 PM | 1 (806) 267-0179 |
| 07/13/21 01:40:37 PM | 1 (214) 794-3401 |
| 07/13/21 02:59:37 PM | 1 (979) 691-3944 |
| 07/14/21 12:40:38 PM | 1 (346) 403-4678 |
| 07/14/21 06:31:38 PM | 1 (254) 274-7650 |
| 07/15/21 03:52:45 PM | 1 (956) 972-7391 |
| 07/15/21 05:43:45 PM | 1 (430) 305-2155 |
| 07/15/21 05:50:45 PM | 1 (915) 626-3894 |
| 07/16/21 01:00:46 PM | 1 (682) 509-4927 |
| 07/19/21 05:20:48 PM | 1 (409) 356-448 |
| 07/20/21 03:27:49 PM | 1 (713) 207-6860 |
| 07/21/21 06:23:50 PM | 1 (210) 900-1279 |
| 07/21/21 06:33:50 PM | 1 (682) 706-4968 |
| 07/22/21 01:45:50 PM | 1 (214) 388-6101 |
| 07/22/21 06:24:50 PM | 1 (210) 576-2536 |
| 07/23/21 05:13:51 PM | 1 (936) 572-4596 |
| 07/23/21 06:16:51 PM | 1 (713) 433-0110 |
| 07/26/21 12:35:53 PM | 1 (713) 848-7364 |
| 07/26/21 12:35:53 PM | 1 (713) 848-7364 |
| 07/26/21 03:03:53 PM | 1 (210) 614-6047 |

| | |
|---|---|
| 07/26/21 03:15:53 PM | 1 (806) 802-5055 |
| 07/27/21 03:10:53 PM | 1 (281) 822-8685 |
| 07/27/21 05:25:53 PM | 1 (940) 841-7432 |
| 07/27/21 06:21:53 PM | 1 (979) 205-8440 |
| 07/28/21 02:29:54 PM | 1 (972) 584-7865 |
| 07/28/21 05:12:54 PM | 1 (214) 263-6559 |
| 08/13/21 03:48:48 PM | 1 (469) 638-0901 |
| 08/13/21 06:43:05 PM | 1 (210) 634-8738 |
| 08/20/21 12:14:43 PM | 1 (346) 414-8920 |
| 08/20/21 12:29:44 PM | 1 (806) 720-9117 |
| 08/20/21 12:46:44 PM | 1 (210) 941-7380 |
| 08/25/21 03:14:56 PM | 1 (713) 428-2230 |
| 08/25/21 03:25:25 PM | 1 (737) 215-8805 |
| 08/25/21 03:25:25 PM | 1 (737) 215-8805 |
| 08/25/21 06:40:57 PM | 1 (214) 644-2740 |
| 08/26/21 05:24:14 PM | 1 (817) 595-6743 |
| 08/26/21 06:53:47 PM | 1 (903) 787-5380 |
| 08/26/21 06:57:11 PM | 1 (512) 686-6570 |
| 08/27/21 04:27:22 PM | 1 (936) 202-8520 |
| 08/30/21 02:27:14 PM | 1 (210) 404-4208 |
| 08/30/21 06:34:03 PM | 1 (361) 257-1953 |
| 08/31/21 12:52:06 PM | 1 (469) 554-0879 |
| 08/31/21 03:39:51 PM | 1 (972) 927-4267 |
| 09/03/21 06:51:07 PM | 1 (713) 215-7356 |
| 09/07/21 01:27:03 PM | 1 (936) 600-5601 |
| 09/07/21 01:46:36 PM | 1 (956) 208-4848 |
| 09/07/21 01:50:00 PM | 1 (713) 427-4357 |
| 09/07/21 03:57:48 PM | 1 (806) 832-4646 |
| 09/09/21 12:57:47 PM | 1 (361) 364-7908 |
| 09/15/21 01:37:55 PM | 1 (806) 324-018 |
| 09/15/21 03:14:50 PM | 1 (972) 778-8360 |
| 09/15/21 03:36:56 PM | 1 (512) 929-0141 |
| 09/16/21 11:57:42 AM | 1 (210) 817-5167 |

| | |
|---|---|
| 09/28/21 05:25:24 PM | 1 (903) 357-4228 |
| 09/28/21 06:47:34 PM | 1 (325) 240-7195 |
| 09/30/21 05:17:04 PM | 1 (210) 494-9211 |
| 10/01/21 03:00:38 PM | 1 (817) 464-5732 |
| 10/05/21 01:09:43 PM | 1 (409) 840-2954 |
| 10/12/21 01:19:22 PM | 1 (254) 638-2442 |
| 10/13/21 12:59:11 PM | 1 (346) 325-1154 |
| 10/13/21 01:08:25 PM | 1 (361) 723-0020 |
| 10/13/21 01:33:36 PM | 1 (430) 888-0820 |
| 10/13/21 05:12:47 PM | 1 (281) 367-6092 |
| 10/14/21 12:14:37 PM | 1 (430) 543-4928 |
| 10/14/21 01:38:16 PM | 1 (214) 653-2291 |
| 10/14/21 07:23:40 PM | 1 (972) 252-3600 |
| 10/15/21 02:34:26 PM | 1 (210) 562-1470 |
| 10/15/21 02:34:26 PM | 1 (210) 245-4710 |
| 10/18/21 02:31:47 PM | 1 (956) 450-6906 |
| 10/19/21 12:56:38 PM | 1 (281) 986-2506 |
| 10/19/21 12:59:54 PM | 1 (281) 590-3658 |
| 10/19/21 06:31:14 PM | 1 (915) 409-4450 |
| 10/19/21 06:31:14 PM | 1 (713) 270-5168 |
| 10/19/21 06:43:51 PM | 1 (806) 665-7465 |
| 10/20/21 03:29:25 PM | 1 (832) 239-9180 |
| 10/20/21 05:20:24 PM | 1 (713) 469-4139 |
| 10/21/21 01:41:37 PM | 1 (903) 978-2743 |
| 10/21/21 02:57:11 PM | 1 (972) 929-1554 |
| 10/21/21 03:48:35 PM | 1 (940) 282-2984 |
| 10/22/21 02:44:03 PM | 1 (972) 649-0160 |
| 10/25/21 02:17:37 PM | 1 (979) 677-5493 |
| 10/25/21 02:49:01 PM | 1 (469) 658-4301 |
| 10/26/21 12:51:02 PM | 1 (713) 643-5086 |
| 10/26/21 02:55:29 PM | 1 (956) 247-6189 |
| 10/27/21 12:50:21 PM | 1 (903) 825-8237 |
| 10/27/21 06:41:37 PM | 1 (806) 453-8958 |
| 10/28/21 01:11:37 PM | 1 (210) 261-5988 |
| 10/28/21 01:11:37 PM | 1 (210) 261-5988 |
| 10/28/21 03:27:12 PM | 1 (254) 602-4854 |

| | |
|---|---|
| 10/29/21 12:48:23 PM | 1 (512) 397-6081 |
| 11/01/21 12:15:24 PM | 1 (915) 615-1264 |
| 11/03/21 01:09:27 PM | 1 (281) 594-7753 |
| 11/04/21 01:06:20 PM | 1 (281) 483-1432 |
| 11/04/21 02:58:11 PM | 1 (682) 219-0186 |
| 11/04/21 03:06:25 PM | 1 (817) 774-2249 |
| 11/04/21 03:06:25 PM | 1 (817) 774-2249 |
| 11/05/21 12:12:57 PM | 1 (956) 509-2864 |
| 11/08/21 06:37:08 PM | 1 (469) 302-3048 |
| 11/08/21 06:37:08 PM | 1 (817) 460-9611 |
| 11/12/21 04:54:16 PM | 1 (210) 444-2881 |
| 11/16/21 05:15:37 PM | 1 (915) 283-3466 |
| 11/17/21 02:15:41 PM | 1 (817) 332-0206 |
| 11/18/21 12:22:38 PM | 1 (806) 551-2739 |
| 11/30/21 12:57:58 PM | 1 (915) 288-3747 |
| 11/30/21 02:40:27 PM | 1 (817) 519-7098 |
| 11/30/21 02:53:29 PM | 1 (979) 742-3392 |
| 11/30/21 04:47:34 PM | 1 (903) 614-5014 |
| 12/01/21 05:36:36 PM | 1 (469) 713-6835 |
| 12/02/21 04:35:00 PM | 1 (361) 351-7268 |
| 12/03/21 01:25:43 PM | 1 (940) 230-2789 |
| 12/07/21 01:09:42 PM | 1 (281) 584-3678 |
| 12/07/21 02:19:45 PM | 1 (972) 235-6558 |
| 12/07/21 06:14:16 PM | 1 (817) 389-0293 |
| 12/08/21 05:44:21 PM | 1 (713) 526-3446 |
| 12/09/21 01:54:05 PM | 1 (903) 957-1131 |
| 12/10/21 01:19:19 PM | 1 (830) 529-0012 |
| 12/10/21 04:41:50 PM | 1 (469) 466-7753 |
| 12/10/21 04:55:15 PM | 1 (903) 420-0328 |
| 12/13/21 11:19:21 AM | 1 (214) 945-0776 |
| 12/13/21 04:05:27 PM | 1 (830) 444-0987 |
| 12/13/21 05:00:49 PM | 1 (361) 993-4084 |
| 12/14/21 01:59:15 PM | 1 (281) 594-7727 |
| 12/14/21 02:26:47 PM | 1 (806) 496-7370 |
| 12/14/21 02:45:21 PM | 1 (210) 568-3064 |
| 12/14/21 04:18:24 PM | 1 (325) 340-4635 |

| | |
|---|---|
| 12/15/21 11:58:54 AM | 1 (430) 360-2998 |
| 12/15/21 01:47:19 PM | 1 (737) 701-5712 |
| 12/15/21 02:08:35 PM | 1 (936) 258-4058 |
| 12/17/21 05:44:27 PM | 1 (208) 778-5599 |
| 9/12/22 1:22 pm | 1 (972) 861-3471 |
| 9/13/22 5:05 pm | 1 (972) 600-0851 |
| 9/29/22 4:41 pm | 1 (254) 659-1596 |
| 10/26/22 1:21 pm | 1 (737) 973-7071 |
| 11/6/22 | |
| 11/14/22 11:02 am | 1 (806) 696-0835 |
| 11/22/22 6:18 pm | 1 (972) 499-5119 |
| 11/25/22 12:54 pm | 1 (945) 219-2602 |
| 11/28/22 12:37 pm | 1 (832) 865-4134 |
| 11/28/22 1:18 pm | 1 (903) 363-9743 |
| 12/1/22 1:37 pm | 1 (936) 870-3441 |

28.     Mr. Compton received additional calls to his cell phone from Defendants not included in the list above.

29.     In order to identify the party/parties calling him unlawfully playing pre-recorded Spanish messages relating to healthcare, Mr. Compton engaged

30.     On or around December 1, 2022, after receipt of a call where a pre-recorded Spanish message played, Mr. Compton stayed on the line to speak with a live agent and engaged with said agent.

31.     The agent asked a series of questions in Spanish to Compton, and upon Compton's request an English-speaking agent appeared on the line. Shortly thereafter, that agent undertook efforts to sell Compton an Ambetter health plan, which is underwritten by Celtic.

32.     Compton agreed to enroll in the Ambetter healthcare plan for investigative purposes. A true and correct image of the Ambetter healthcare card for the policy underwritten by Celtic (in which Celtic misspelled his last name), is copied below.



33. As reflected above, the card reads "© Celtic Insurance Company."

34. Accordingly, it is now clear that Celtic is the party that hired agents (whose identities are still unknown) to carry out a telemarketing campaign on its behalf.

35. Compton understands each of the calls listed in the chart above were part of Celtic's campaign, as the cadence, tone, script and syntax of the calls were identical or substantially similar from call to call.

36. It was only through these undercover efforts described above that Compton was able to learn Celtic was the party behind the calls.

37. Despite the requirements of 47 U.S.C. § 227(e)(1), Defendants hid their identity by, *inter alia,* masking their actual phone numbers and instead using "spoofed" numbers, that have traditionally been difficult to trace.

38. Furthermore, the calling parties do not disclose their identities in the pre-recorded messages that played when Compton answered the calls.

39. Accordingly, despite Compton's best efforts, the identities of the parties making unlawful robocalls on Celtic's behalf remain elusive.

40. The frequent telemarketing robocalls were irritating, disruptive and an invasion of Mr. Compton's privacy.

### Direct and Vicarious Liability

41. On May 9, 2013, the FCC issued a Declaratory Ruling that held that sellers (such as Celtic) may not avoid liability by outsourcing telemarketing to third-parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

42. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

43. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

44. Celtic hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers, whose identities are currently unknown.

45. The John Doe telemarketers had actual and/or apparent authority to act on behalf of Celtic.

46. The John Doe telemarketers had the right to enter into contracts on Celtic's behalf.

47. John Doe telemarketers had the right and the ability to send an Ambetter healthcare policy card in the mail on behalf of Celtic.

48. Upon information and belief, Celtic enters into contracts with insurance agents (which place telemarketing calls) which provide Celtic with the near absolute right to direct and control its agents' activities.

49. Likewise, Celtic ratified its telemarketers' violations of the TCPA by accepting leads and deriving profit from sales imitated by unlawful robocalls.

50. With widespread TCPA violations among healthcare telemarketers Celtic had reason to know its agents were violating the TCPA through marketing Celtic policies. Instead of preventing those unlawful calls, it profited and turned the blind eye.

51. Celtic is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

## COUNT I
### Defendants Violated 47 U.S.C. § 227(b) of the TCPA

52. Compton incorporate the forgoing paragraphs as though the same were set forth at length herein.

53. The TCPA prohibits placing calls or texts using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

54. By placing prerecorded voice calls to the cell phones of Compton without first obtaining that prior express written consent Defendants violated the TCPA, including, but not limited to 47 U.S.C. § 227(b)(1).

55. Defendants' calls were not made for "emergency purposes".

56. Defendants' calls to the Compton' cell phones were made without any prior express consent.

57. The TCPA provides for a private right of action and statutory damages of $500.00 per violation, and up to $1,500.00 if the violation is determined to be willful. 47 U.S.C. § 227(b)(3).

58. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Compton' rights under the law and with the purpose of harassing Plaintiff.

59. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

60. As a result of the above violations of the TCPA, Compton have suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages, as well as declaratory and injunctive relief.

**COUNT II**
**Defendants Violated 47 U.S.C. § 227(c)(5) of the TCPA**

61. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

62. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

63. Defendants contacted the Plaintiff despite the fact that the Mr. Compton has been registered his number on the Do Not Call Registry since as early as July 1, 2014.

64. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." See 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

65. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. §227(a)(4).

66. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." See FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R § 64.1200(a)(2).

67. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500.00 per violation and up to $1,500.00 per violation if the violation is determined to be willful. See 47 U.S.C. §§ 227(c)(5).

68. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5)(A).

69. By calling the Mr. Compton's cell phone after his telephone number was registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

70. Defendants knew or should have known that the Mr. Compton had his telephone number registered on the Do Not Call Registry.

71. Plaintiff is entitled to damages of $500.00 per violation for each call placed and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

## COUNT III
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(e)
### *Injunctive Relief*

72. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

73. 47 U.S.C.S. § 227(e)(1) provides it "shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B)."

74. Defendants masked their identities in a manner that was deceptive, rendering Plaintiff unable to ascertain the identities of the calling parties without subpoena power and therefore unable to stop the calls or seek recourse in court without first having subpoena power.

75. Those acts and omissions by Defendants caused Plaintiff to incur damages and pecuniary harm.

76. Plaintiff seeks injunctive relief in the form of an Order requiring the Defendants to demonstrate to the Court that they have ceased and desisted their practice of masking their identities and "spoofing" their phone numbers.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff, **Lee Compton,** respectfully prays for judgment as follows:

a. All actual damages suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

d. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(B));

e. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(C);

f. Injunctive relief as provided under 47 U.S.C. § 227(b)(3) and (c);

g. Injunctive relief as provided under 47 U.S.C. § 227(e);

h. Declaratory relief; and

i. Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

**Please take notice** that Plaintiff, Lee Compton**,** demands a jury trial in this case.

                                      Respectfully submitted,

Dated: June 6, 2024                          By: */s/ Jacob U. Ginsburg*
                                                        Jacob U. Ginsburg, Esq.
                                                         Kimmel & Silverman, P.C.
                                                         30 East Butler Ave.
                                                         Ambler, PA 19002
                                                         Phone: 215-540-8888 ext. 104
                                                         Facsimile: 877-788-2864
                                                         Email: jginsburg@creditlaw.com
                                                         teamkimmel@creditlaw.com